IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Case No. 1:21-cv-383-NCT-JEP

| | | |
|---|---|---|
| TIFFANY ADELE KING, as Administratrix of the Estate of Maurice Antoine King, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CHARLES S. BLACKWOOD, in his official capacity as Sheriff of Orange County, ORANGE COUNTY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, WILLIAM D. BERRY, JR., in his individual capacity, THOMAS E. LINSTER, III, in his individual capacity, WILMER A. GOMEZ, in his individual capacity, STEFAN H. HOOKER, in his individual capacity, KENDRICK R. MOORE, in his individual capacity, ANTONIO R. CARTNAIL, in his individual capacity, ANGELA K. SPEAR, in her individual capacity, JERRY R. HAWKINS, in his individual capacity, JAMISON R. SYKES, in his individual capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **BRIEF IN SUPPORT OF THE MOTION TO DISMISS AMENDED COMPLAINT OF STEFAN HOOKER, KENDRICK MOORE, ANTONIO CARNAIL, ANGELA SPEAR, JERRY HAWKINS, AND JAMISON SYKES** |
| Defendants. | ) ) ) | |

Defendants Stefan H. Hooker, Kendrick R. Moore, Antonio R. Cartnail, Angela K. Spear, Jerry R. Hawkins, and Jamison R. Sykes (the "moving defendants"), hereby submit their Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint.

## STATEMENT OF THE CASE

On May 17, 2021, Plaintiff, acting as Administratrix of the Estate of Maurice King, filed her Complaint, asserting various claims for deliberate indifference under 42 U.S.C. § 1983 and

wrongful death under North Carolina law. (Compl., D.E. 1.) On July 16, 2021, all of the defendants timely moved to dismiss the Original Complaint. (D.E. 22–23.) Rather than substantively respond to the motion, Plaintiff filed an Amended Complaint on August 23, 2021, but retained the majority of the core factual allegations of the Original Complaint. (D.E. 30–32.)

As to the moving defendants, Plaintiff has sued the individual defendants in their individual capacities under 42 U.S.C. § 1983 and state law. (Amend. Compl. ¶¶ 202–240.) The moving defendants now timely move to dismiss all of the Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

<u>**ALLEGED FACTUAL BACKGROUND**</u>

**A. General Allegations.**

Plaintiff alleges that, on March 4, 2020, while Maurice King was housed at the Orange County Detention Center ("OCDC") as a federal prisoner after being convicted for three counts of distribution of cocaine, Mr. King invited an inmate to come into his cell which was located in an area of OCDC known as B pod. (Amend. Compl. ¶¶ 39, 140.). Plaintiff alleges that, thereafter, four prisoners "orchestrated" an assault on Mr. King while distracting detention officers away from Mr. King's cell, such as by "point[ing]" them or "le[ading]" them "away" from it. (Id. ¶¶ 137, 140(s)–(v).) Plaintiff further alleges that defendants Berry and Linster were on duty at the OCDC during the assault and responsible for conducting rounds in B pod, and that, while they conducted rounds, prisoners intentionally distracted them away from Mr. King's cell, pointed the officers away or led them away, or otherwise blocked Mr. King, causing them not to observe Mr. King or his injuries. (Id. ¶¶ 140(s)–(v), 140(cc)–(kk).) Plaintiff alleges that approximately fifteen minutes after defendant Berry visibly observed Mr. King's injuries, defendants Berry, Linster, and Gomez went to Mr. King's cell and carried Mr. King out of his cell, placed him in a wheelchair, and took

2

him to the nurse's office so that he could receive medical attention. (Id. ¶¶ 146–148, 157–167.) Plaintiff alleges that the nurse then called 911 ten minutes after observing Mr. King, and that emergency medical services arrived to transport Mr. King to the Duke Emergency Department ("Duke") seven minutes after the call was made. (Id. ¶¶ 167–169.) Plaintiff further alleges that Mr. King suffered trauma to the head, and suffered a major heart attack and died shortly after arriving at Duke. (Id. ¶¶ 9–11, 166–169.)

### B. Specific Allegations (and Lack Thereof) Against the Moving Defendants.

As to the moving defendants specifically, Plaintiff's factual allegations underscore an erroneous theory that mere presence at OCDC, or potential observation of crowded cell conditions after Mr. King invited others into his cell, can subject an individual to liability for deliberate indifference:

#### 1. Stefan H. Hooker

The only specific factual allegations in Plaintiff's Complaint relating to Stefan H. Hooker (who was serving as mere transportation officer at OCDC) are that he was on duty as a detention officer at OCDC and on duty on March 4, 2020. (Amend. Compl. ¶¶ 73–75, 129.) There is no specific allegation that defendant Hooker ever had any contact with or interaction with Mr. King on or before March 4, 2020.

#### 2. Kendrick R. Moore

The only specific factual allegations in Plaintiff's Complaint relating to Kendrick R. Moore are that he was on duty as a supervising Corporal at OCDC and on duty on March 4, 2020. (Amend. Compl. ¶¶ 76–78, 129.) There is no specific allegation that defendant Moore ever had any contact with or interaction with Mr. King on or before March 4, 2020.

### 3. Antonio R. Cartnail

The only specific factual allegations in Plaintiff's Complaint relating to Antonio R. Cartnail are that he was on duty as a supervising Sergeant at OCDC and on duty on March 4, 2020. (Amend. Compl. ¶¶ 79–81, 129.) There is no specific allegation that defendant Cartnail ever had any contact with or interaction with Mr. King on or before March 4, 2020.

### 4. Angela K. Spear

The only specific factual allegations in Plaintiff's Complaint relating to Angela K. Spear are that she was a First Lieutenant to the Administrator of OCDC on March 4, 2020, and that Ms. Spear was present at OCDC or on duty on March 4, 2020. (Amend. Compl. ¶¶ 82–85, 129.) There is no specific allegation that defendant Spear ever had any contact with or interaction with Mr. King on or before March 4, 2020, other than allegations that unnamed defendants which may include Ms. Spear were in the control room during the alleged assault and medical response.

### 5. Jerry R. Hawkins

The only specific factual allegations in Plaintiff's Complaint relating to Jerry R. Hawkins are that Hawkins was the Administrator of the OCDC on March 4, 2020, and that Hawkins was working as "supervising administrator" at OCDC on March 4, 2020. (Amend. Compl. ¶¶ 86–91, 129.) There is no specific allegation that defendant Hawkins ever had any contact with or interaction with Mr. King on or before March 4, 2020.

### 6. Jamison R. Sykes

The only specific factual allegations in Plaintiff's Complaint relating to Jamison R. Sykes are that he was Chief Deputy to Sheriff Blackwood on March 4, 2020; there is no allegation that Sykes was present at OCDC on March 4, 2020. (Amend. Compl. ¶¶ 92–94, 129.) There is no

4

specific allegation that defendant Sykes ever had any contact with or interaction with Mr. King on or before March 4, 2020. Notably, Plaintiff has admitted in the Complaint that Sykes is the Sheriff's Chief Deputy rather than an actual detention officer or administrator at the OCDC, but nonetheless attempts to rely on an alleged supervisory role as a basis to sue him. (Id. ¶¶ 93, 129)

### 7. Non-Specific Allegations

Without offering specifics as to each specific moving defendant, Plaintiff alleges that it was "in view of the control room" and "on display in monitors inside the control room" that Mr. King invited or "motioned" for Mr. Grantz to follow him into Mr. King's individual cell, that other inmates joined after Mr. King invited Mr. Grantz, that inmates stood outside of Mr. King's cell, that inmates otherwise walked in and out of Mr. King's cell, and that Berry, Linster, and Gomez removed Mr. King from him cell after his injuries were observed. (Amend. Compl. ¶ 140.) As discussed below, even taken as true as to each individual defendant and assuming that all five individual defendants were present in the control room at all times relevant to the Amended Complaint, such allegations do not give rise to any claim.

**ARGUMENT**

## I. STANDARD OF REVIEW.

### A. Standard for Rule 12(b)(6) Motion Under Supreme Court Precedent.

Under Rule 12(b)(6), a complaint must give each defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). To meet this requirement, the complaint must be supported by factual allegations. "While legal conclusions can provide the framework of the complaint," neither legal conclusions nor conclusory statements are themselves sufficient and such statements are not entitled to presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). To survive a motion to

5

dismiss, a plaintiff's complaint must allege "more than an unadorned, the defendant- unlawfully-harmed-me accusation." Id. at 678. Instead, a complaint will survive a motion to dismiss under Rule 12(b)(6) only if it contains facts sufficient to "state a claim that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In short, the Twombly and Iqbal standard allows this Court to look past Plaintiff's boilerplate allegations, analyze the specific factual allegations, and assess this motion and each claim accordingly.

**B. Standard for Analyzing Whether Individual Defendants Are Entitled to Qualified Immunity.**

Supreme Court precedent clearly mandates that in order to withstand a motion to dismiss and hold any individual liable under Section 1983, plaintiffs must "plead ... that **each** Government-official defendant, through the official's **own individual actions**, has violated the Constitution…. [E]ach Government official…is only liable for his or her own misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 676–77 (2009) (emphasis added). "Because vicarious liability is inapplicable to...§ 1983 suits, a plaintiff...must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft, 556 U.S. at 676. Correspondingly, under binding Fourth Circuit precedent, in order to hold any officer liable under Section 1983, Plaintiffs must show that each officer "acted personally in the deprivation of plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). This is because, under binding authority, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d

6

391, 402 (4th Cir. 2001).[1]  A plaintiff's failure to plead that each individual officer, though his or her own actions, has violated the Constitution will doom the plaintiff's Section 1983 claim as to each officer and will entitle such officer to qualified immunity.  This is shown below.

The Tenth Circuit's decision in Pahls v. Thomas, 718 F.3d 1210 (10th Cir. 2013) demonstrates how binding Supreme Court authority must be applied in Section 1983 cases which, like the instant case, involve multiple individual defendants:

> But common to all § 1983 ... claims is the requirement that liability be predicated on a violation traceable to a defendant-official's "own individual actions." Iqbal, 556 U.S. at 676….
>
> Because § 1983 [is a vehicle] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. "[I]t is particularly important" that plaintiffs "make clear exactly who is alleged to have done what to whom, ... as distinguished from collective allegations." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011) (alteration in original) (quoting Robbins v. Okla. Ex rel. Dep't of Human Servs., 519 F.3d 1242, 1250 (10th Cir. 2008) (internal quotation marks omitted). When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights. See Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 532-33 (10th Cir. 1998); see also Brown v. Montoya, 662 F.3d 1152, 1165 (10th Cir. 2011) ("The Complaint refers to actions of 'Defendants,' but that is not sufficient to show how Secretary Williams 'might be individually liable for deprivations of [Mr. Brown's] constitutional rights.'" (Alteration in original) (quoting Robbins, 519 F.3d at 1250)). Rather, it is incumbent upon a plaintiff to "identify specific actions taken by particular defendants" in order to make out a viable § 1983…claim. Tonkovich, 159 F.3d at 532 (emphasis added); see Lewis, 604 F.3d at 1230….
>
> In sum, building on our earlier discussion: To make out viable § 1983…claims and to overcome defendants' assertions of qualified immunity, plaintiffs here must establish that each defendant – whether by direct participation or by virtue of a

---

[1] The requirement that a plaintiff must plead facts showing that each officer has violated the Constitution through his or her own actions is also relevant to both prongs of the qualified immunity analysis -- i.e., has Plaintiff shown (1) that each individual officer, through his or her own individual actions, violated the Constitution, and (2) was it "clearly established" that each officer's specific actions violated the Constitution?  See, e.g., Saucier v. Katz, 533 U.S 194, 201 (2001).

7

policy over which he possessed supervisory responsibility – caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind. Plaintiffs must do more than show that their rights "were violated" or that "defendants," as a collective and undifferentiated whole, were responsible for those violations…. They must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated their clearly established constitutional rights…. Failure to make this showing…dooms plaintiffs' § 1983…claims and entitles defendants to qualified immunity.

718 F.3d at 1225–26, 1228.

Justice Thomas's dissent in Hope v. Pelzer articulates the principle well:

In conducting qualified immunity analysis, … courts do not merely ask whether, taking the plaintiff's allegations as true, the plaintiff's clearly established rights were violated. Rather, courts must consider as well whether *each defendant's alleged conduct violated the plaintiff's clearly established rights*. For instance, an allegation that Defendant A violated a plaintiff's clearly established rights does nothing to overcome Defendant B's assertion of qualified immunity, absent some allegation that Defendant B was responsible for Defendant A's conduct.

536 U.S. 730, 751 n. 9 (2002) (Thomas, J., dissenting) (emphasis added).

In a similar case in North Carolina federal court, Bailey v. Polk County, et. al., No. 1:10-cv-264, 2011 WL 4565449 (W.D.N.C. 2011) (unpublished),[2] the Plaintiffs brought suit against numerous Defendants for multiple claims for relief (Section 1983 claims and state law claims) without identifying what specific acts were done by each individual Defendant. In response to a motion to dismiss, the Plaintiffs asserted that they could develop this information during discovery. Id. at * 3. The Magistrate Judge disagreed:

The "who did what to whom" is not a mere afterthought as plaintiffs' argument suggests, but is, rather, essential to alleging causes of action that can survive Rule 12(b)(6) scrutiny. No longer may a plaintiff simply bring a claim against a defendant without both knowing and explaining the wrongful conduct that warrants haling that defendant into court to answer such charge. Indeed, the Court recognized that it is impossible to answer or defend against a charge where the defendant does not provide notice of the conduct plaintiff contends was unlawful or harmful….

---

[2] This Memorandum and Recommendation was adopted by the district court on September 29, 2011. Bailey v. Polk County, et. al., No. 1:10-cv-264, 2011 WL 4565469 (W.D.N.C. 2011) (unpublished).

Id. at * 4.

Qualified immunity may properly be asserted and addressed at the Rule 12(b)(6) stage. "Unless the plaintiff's allegations state a claim of violation of clearly established law, defendant[s] pleading qualified immunity [are] entitled to dismissal before the commencement of discovery." Cloaninger v. McDevitt, 555 F.3d 324, 330 (4th Cir. 2009) (citation omitted); see also Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997). Where a plaintiff fails to state a claim for a constitutional violation, early dismissal is appropriate. See Jackson v. Holley, 666 Fed. App'x 242, 244–45 (4th Cir. 2016) (holding that "[defendant] was entitled to qualified immunity and her motion to dismiss should have been granted by the district court" where no constitutional violation was plausibly alleged).

As discussed below, Plaintiff has not plausibly alleged that defendants Hooker, Moore, Cartnail, Spear, Hawkins, or Sykes were directly or personally involved or even aware of the incident at issue, and Plaintiff has failed to allege facts sufficient to establish a prima facie claim for any constitutional violation against defendants Berry, Linster, and Gomez. Much less has Plaintiff alleged a violation of any "clearly established" rights. In short, the Plaintiff's Section 1983 claims against the defendants in their individual capacities fall woefully short of complying with Iqbal and Twombly. Also, Plaintiff's Section 1983 claims against these defendants should be dismissed because Plaintiff has failed to allege specific facts demonstrating how each officer "acted personally" to violate Mr. King's rights. Wright v. Collins, supra. Plaintiff's failure to identify specific unconstitutional actions taken by specific individual defendants "dooms plaintiff['s] § 1983…claims and entitles [the moving] defendants to qualified immunity." Pahls, 718 F.3d at 1225–26.

9

**II.  PLAINTIFF HAS NOT PLAUSIBLY ALLEGED CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS UNDER SECTION 1983 FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS.**

**A.  The Individual Defendants Are Entitled to Qualified Immunity and Dismissal of Plaintiff's Claims for Deliberate Indifference to Medical Needs.**

Plaintiff has asserted Section 1983 claims for deliberate indifference to medical needs against all of the moving defendants. In order for Plaintiff to state a claim or claims for "deliberate indifference" under Section 1983 as to each individual defendant, Plaintiff must allege factual matter showing that (1) Mr. King had an objectively serious medical need; (2) each individual defendant subjectively recognized that King had an objectively serious medical need; and (3) that each individual defendant acted with deliberate indifference to King's objectively serious medical need by acting in a way that each individual defendant subjectively recognized was inappropriate. See, e.g., Farmer v. Brennan, 511 U.S. 825, 835-845 (1994); Iko v. Shreve, 535 F.3d 225, 241-242 (4th Cir. 2008); Parrish v. Cleveland, 372 F.3d 294, 302-309 (4h Cir. 2004); Brown v. Harris, 240 F.3d 383, 388-390 (4th Cir. 2001); Young v. City of Mount Ranier, 238 F.3d 567, 575-6 (4th Cir. 2001); Grayson v. Peed, 195 F.3d 692, 695-6 (4th Cir. 1999); Rich v. Bruce, 129 F.3d 336, 338-340 (4th Cir. 1997).

Under the first prong of the "deliberate indifference" test, in order for Plaintiff to state a claim for "deliberate indifference" under 42 U.S.C. § 1983, the Plaintiff must allege facts showing that Mr. King suffered an objectively serious medical condition. As the Fourth Circuit stated in Grayson v. Peed, 195 F.3d 692 (4th Cir. 1999), in order for the Plaintiff to show an "objectively serious" medical injury or condition, there must be "objective evidence available to [the officer] at the time of the incident that [the inmate] has a serious need for medical care." 195 F.3d at 695. Moreover, when making the determination as to whether there was "objective evidence" of a serious medical condition available to the officer, it is impermissible to use the 20/20 vision of

10

hindsight. <u>Grayson</u>, 195 F.3d at 695 (4th Cir. 1999) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)).

Under the second prong of the "deliberate indifference" test, the Plaintiff must allege facts showing that each officer subjectively knew of King's serious medical need. The second prong of the "deliberate indifference" test "requires a showing that the defendant[]...actually knew of...detainee's serious need for medical care." <u>Parrish</u>, 372 F.3d at 302, <u>quoting</u> <u>Young v. City of Mount Ranier</u>, 238 F.3d at 575-76. <u>See</u> <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. at 1979 (The officer must "know[ ] of...an excessive risk to inmate health or safety"); <u>Iko</u>, 535 F.3d at 241 and 243 ("[A]ctual knowledge of the risk of harm to the inmate is required" and the officer must be "subjectively aware" of "objectively serious" medical needs); <u>Parrish</u>, 372 F.3d at 303 ("[T]he evidence must show that the official in question subjectively recognized a substantial risk of harm"). As the Supreme Court and the Fourth Circuit have made clear, "[i]t is not enough that the officer[ ] should have recognized it; [he] actually must have perceived the risk." <u>Parrish</u>, 372 F.3d at 303 (citing <u>Rich v. Bruce)</u>, 129 F.3d at 340 n. 2. <u>See Iko</u>, <u>supra</u>. ("It is not enough that the officer[ ] should have recognized it"). Consequently, "an official's failure to alleviate a significant risk that he should have perceived but did not" does not meet the standard. <u>Farmer</u>, 511 U.S. at 838, 114 S. Ct. at 1979. Thus, in order for an officer to be liable under this standard, the officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, <u>supra</u>.; <u>Parish</u>, 372 F.3d at 302 (same); <u>Rich v. Bruce</u>, 129 F.3d at 340 ("<u>Farmer</u> makes it clear that the defendant official...must actually have drawn the inference"). As the Fourth Circuit stated in <u>Parrish</u>, <u>supra</u>.:

> [T]he officers not only must recognize the facts giving rise to the risk, but they must also draw the additional causal inference...[W]e are concerned with the risk as they perceived it, not as a reasonable officer under the circumstances should have

11

perceived it,... and not as it now may be perceived enlightened by the benefit of hindsight.

372 F.3d at 303-4 (citations omitted).

The third prong of the "deliberate indifference" test requires the plaintiff to allege facts showing that, as to each individual defendant, there was a "subjective intent to cause harm." Parrish, 372 F.3d at 307, quoting Hare v. City of Corinth, 74 F.3d 633, 649 (5th Cir. 1996) (en banc). "Deliberate indifference is a high standard — a showing of mere negligence will not meet it." Grayson, 195 F.3d at 695. The third prong "requires a showing that the defendant[ ] actually...knew of and ignored a detainee's serious need for medical care." Young, 238 F.3d at 575-6. "A claim of deliberate indifference...implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." White ex. rel. White v. Chambliss, 112 F.3d 731, 737 (4th Cir. 1997); Young, 238 F.3d at 576 (same). Beyond actual knowledge of an inmate's serious medical need, "the officer must also have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs." Iko, 535 F.3d at 241, citing Parrish, 372 F.3d at 303 (emphasis in original). Thus, "even subjective knowledge of [the inmate's] medical needs is not enough; the officer[ ] must have actually known that [his] response was inadequate to address those needs (the second part of the subjective component)." Iko, 535 F.3d at 242 (emphasis in original). See also Rich v. Bruce, 129 F.3d at 340, n. 2. As the Fourth Circuit in Parrish, supra. explained regarding the third prong of the "deliberate indifference" test:

> [T]he evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient. See Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001).

12

372 F.3d at 303 (emphasis in original). The Fourth Circuit in <u>Parrish</u> also made the following point:

> [T]he question in deliberate indifference cases is not whether the officials could have taken additional precautions -- almost invariably, with the benefit of 20/20 hindsight, there are additional precautions that could have been taken -- but whether they "disregard[ed] an excessive risk to...health or safety." <u>Brown</u>, 240 F.3d at 390-91 (noting that failure to take additional precautions showed, at most, negligence and not deliberate indifference).; <u>Grayson</u>, 195 F.3d at 695 (rejecting as "impermissible 20/20 hindsight" the contention that officers should have taken detainee to a medical facility).

372 F.3d at 309 (emphasis in original). Thus, as made clear by the Fourth Circuit in <u>Parrish</u> and other cases, in order for a plaintiff to satisfy the third prong of the "deliberate indifference" test, Plaintiff must allege facts showing that each officer acted with a "subjective intent to cause harm" and that each officer subjectively knew that his or her actions were inappropriate. <u>Parrish</u>, 372 F.3d at 307, 309. Conversely, if each officer subjectively "believed that [his or her] actions were sufficient," the officers cannot be found to be deliberately indifferent. 372 F.3d at 308.

Importantly, "[i[f a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." <u>Iko</u>, 535 F.3d at 242; <u>Shakka</u>, 71 F.3d at 167; <u>Smith v. Barry</u>, 985 F.2d 180, 184 (4th Cir. 1993) (affirming directed verdict for prison guards not in a position to "act meaningfully" with regard to inmate's medical needs); <u>Mason v. Angelone</u>, No. Civ. A.7:01–CV–309, 2003 WL 23312780, at *4 (W.D. Va. Mar. 31, 2003).

Assuming, for the sake of argument, that Plaintiff has alleged sufficient facts to show that Mr. King had an objectively serious medical condition under the first prong of the "deliberate indifference" test, Plaintiff has clearly not alleged specific facts to satisfy the second and third prongs of the "deliberate indifference" test as to any individual moving defendant. More particularly, Plaintiff has not alleged specific facts showing that any of the individual moving

13

defendants (1) subjectively recognized that King had an objectively serious medical condition, and (2) acted with deliberate indifference to King's objectively serious medical condition.

**B.  Plaintiff Has Not Alleged That Defendants Were Deliberately Indifferent.**

As to the moving defendants, the only specific allegations relating to these five individual defendants is that they were present or otherwise on duty at the OCDC on March 4, 2020. As to Sykes, the only specific allegations are that he was the Sheriff's Chief Deputy on March 4, 2020 and that the jail administrator reported to him. There are no plausible allegations in Plaintiff's Amended Complaint stating that any of these individuals had any interaction or contact with Mr. King, that any of them observed or otherwise knew of any of Mr. King's medical needs, or that any of them were involved with or interfered with his medical treatment. Plaintiff admitted in the Amended Complaint that other defendants observed Mr. King's injuries, and that those other defendants responded by transporting Mr. King from his cell to the nurse's station and having EMS transport him out of OCDC. Plaintiff cannot expect to simply name every officer connected to OCDC or present at OCDC as a defendant and then have her claims proceed, particularly in light of Farmer v. Brennan and the qualified immunity framework. Plaintiff's failure to allege facts showing any specific action of any individual defendant violated the Constitution "dooms plaintiff's § 1983 ... claims and entitles [these] defendants to qualified immunity." Pahls, 718 F.3d at 1225–26.

**III.     PLAINTIFF HAS NOT PLAUSIBLY ALLEGED CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS UNDER SECTION 1983 FOR DELIBERATE INDIFFERENCE TO SAFETY FROM ASSAULT.**

**A.  The Moving Defendants Are Entitled to Qualified Immunity and Dismissal of Plaintiff's Failure to Protect Claims.**

Plaintiff has asserted Section 1983 claims for deliberate indifference to Mr. King's safety from assault—also known as an alleged "failure to protect" claim—against all of the individual

14

defendants. To establish liability for failing to protect a prisoner from other inmates, a prisoner must satisfy a two-part inquiry, consisting of objective and subjective prongs. Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016).  For purposes of the objective prong, the plaintiff " 'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury' or a substantial risk thereof. Id. (quoting Danser v. Stansberry, 772 F.3d 340,346-47 (4th Cir. 2014)).

To satisfy the subjective prong, a plaintiff must establish that the defendant had a "sufficiently culpable state of mind," or "deliberate indifference to inmate health and safety." Raynor, 817 F.3d at 127-28.  A defendant can only be held liable for failure to protect if a plaintiff alleges that each of them actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Mays v. Smith, No. 5:18-CT-3186-FL, 2019 U.S. Dist. LEXIS 31860, at *13 (E.D.N.C. Feb. 27, 2019) (dismissing claims at 12(b)(6) stage).  The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.; accord Fordham v. Keller, No. 1:13CV617, 2017 U.S. Dist. LEXIS 42299, at *19 (M.D.N.C. Mar. 20, 2017) ("There is no evidence that Defendants were aware of any risk posed to Plaintiff."); Pyrtle v. Hayes, No. 1:10CV683, 2012 U.S. Dist. LEXIS 177338, at *14 (M.D.N.C. Dec. 14, 2012) ("Farmer expressly adopted a subjective recklessness test for deliberate indifference that requires actual knowledge of facts establishing a substantial risk of serious harm[.]") (emphasis in original).

Negligent failure to protect an inmate from an assault by another inmate does not violate the inmate's constitutional rights. See Danser, 772 F.3d at 346–47; Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Case v. Ahitow, 301 F.3d

15

605, 605 (7th Cir. 2002) ("deliberate indifference to the plaintiff's safety[] mean[s] that [prison officials] knew of a serious danger to him (really knew-not just should have known, which would be all that would be required in a negligence case)"); Pyrtle, 2012 U.S. Dist. LEXIS 177338, at *14-15; Comisac v. White, No. 5:09-CT-3166-FL, 2012 U.S. Dist. LEXIS 60700, at *16-17 (E.D.N.C. May 1, 2012). "Moreover, a prison official's failure to alleviate a significant risk of harm to an inmate that the official should have perceived but did not does not violate due process." Blount v. Young, No. 5:12-CT-3072-D, 2013 U.S. Dist. LEXIS 176766, at *8-9 (E.D.N.C. Dec. 17, 2013) (internal quotation marks omitted)

Thus, even where a defendant has knowledge that a plaintiff is at risk of harm, liability will not be imposed where the defendant believes, "(albeit unsoundly)[,]" that the risk to the plaintiff was insubstantial or nonexistent. Rice v. Bruce, 129 F.3d 336, 338, 340 n.2 (4th Cir. 1997); see also Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003); McFadden v. Co. II Butler, Civil Action No. TDC-16-0437, 2018 U.S. Dist. LEXIS 45006, at *12-13 (D. Md. Mar. 16, 2018) (granting motion for summary judgment where assailant had no history of violence, no evidence that assailant threatened plaintiff or that plaintiff was assailant's enemy, and no evidence that plaintiff ever "expressed any concern for his safety" to the defendants).

Finally, there must be a causal relationship between the acts of the defendant and the harm ultimately suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 798-99 (4th Cir. 1994). Where, as here, a plaintiff sues alleged supervisors that had no direct involvement, the plaintiff's claim will fail unless he proves:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an

16

*affirmative causal link* between the supervisors inaction and the particular constitutional injury suffered by the plaintiff.

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (citation and quotation omitted) (emphasis added).

Given the third element above—causation—where a plaintiff is the cause of or provokes his own harm, or where harm would have occurred regardless of the conditions of confinement, a plaintiff's claim must be dismissed. As is the case here, when a prisoner voluntarily invites another into his cell and is assaulted thereafter, claims of deliberate indifference or fear for safety should be rejected. See Delgado v. Solomon, No. 5:16-CT-3163-FL, 2020 WL 1528518, at *5 (E.D.N.C. Mar. 30, 2020):

> [P]laintiff voluntarily walked to a private cell with Williams, where no corrections officers were present and which was outside the range of the security cameras. As plaintiff was walking towards the cell, he saw either Harvey or Currie walking behind him, and he still did not return to the day room area or seek protective custody. And plaintiff followed Williams despite the fact that he allegedly is a known gang member who had free rein to assault inmates on the unit. The video recording thus severely undercuts plaintiff's conclusory assertions…that defendants were deliberately indifferent to a known risk of harm.

See also Ervin v. Mangum, No. 93-7129, 1997 U.S. App. LEXIS 29363, at *12–14 (4th Cir. Oct. 27, 1997) (unpublished) (finding that "the connection between the conditions at the jail and the attack on [the plaintiff] are far too attenuated to support" plaintiff's claim); Lemmons v. Durant, No. 10-3030, 2011 U.S. Dist. LEXIS 114113, 2011 WL 4633104 at * 3 (C.D. Ill. Oct. 4, 2011) (granting summary judgment for defendants where plaintiff put himself in harm's way, confronting the assailant); accord, Ferola v. Eagleton, No. 9:15-2006-RBH-BM, 2016 U.S. Dist. LEXIS 135994, at *35-36 (D.S.C. Aug. 26, 2016), Parks v. City of N.Y., 2006 U.S. Dist. LEXIS 18688, at *17 (S.D.N.Y. Apr. 10, 2006).

17

### B. Defendants Hooker, Moore, Cartnail, Spear, Hawkins, and Sykes.

As to defendants Hooker, Moore, Cartnail, Spear, and Hawkins, the only specific allegations relating to these five individual defendants is that they were on duty at the OCDC on March 4, 2020, and that they may have observed various inmates go in and out of Mr. King's cell after Mr. King invited Mr. Grantz to join him in his cell. Similarly, the only specific allegations relating to Sykes is that he was the Sheriff's Chief Deputy on March 4, 2020, and that the jail administrator reported to him. There are no factual allegations in Plaintiff's Complaint stating that any of these individuals had any interaction or contact with Mr. King, that any of them were aware or otherwise had actual knowledge that Mr. King was specifically at risk, no allegations that any of these individuals conducted rounds in B pod or otherwise observed the interactions in B pod, and no other allegations that would otherwise satisfy the high bar imposed by Farmer v. Brennan or Shaw v. Stroud. Plaintiff's allegations about mere presence in the control room sound of mere negligence, which is insufficient under the authorities cited above. Plaintiff's strategy of naming every officer conceivable, coupled with Plaintiff's failure to allege facts showing any specific action of any individual defendant violated the Constitution, "dooms plaintiff's § 1983...claims and entitles [these] defendants to qualified immunity." Pahls, 718 F.3d at 1225–26.

### IV. PLAINTIFF'S SECOND CLAIM SHOULD BE DISMISSED AS REDUNDANT.

Plaintiff has also improperly asserted her second claim for relief—which is a Monell claim against OCDC for purported policies of deliberate indifference—against all of the individual defendants. (Amend. Compl. ¶¶ 217–234 (alleging "municipal liability").) Since Sheriff Blackwood and/or Orange County are already named as defendants, the second claim should also be dismissed against the moving defendants as duplicative and unnecessary. See Jones v. Houston, 2010 WL 3835147, *14 n. 3 (E.D.N.C. Sept. 28, 2010) (citing Boyd and stating that "[a] claim

18

against a sheriff and his deputy in their official capacities is really one claim against the office of the sheriff."); see also Wilcoxson v. City of Raleigh, No. 5:13-CV-732-FL, 2014 U.S. Dist. LEXIS 109689, at *16–17 (E.D.N.C. July 18, 2014) (dismissing redundant claims, citing Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004)); accord Hatley v. Bowden, No. 5:13-CV-765-FL, 2014 U.S. Dist. LEXIS 28173, 2014 WL 860538, at *2 n.4 (E.D.N.C. Mar. 5, 2014); Hicks v. Halifax Cty. Bd. of Educ., 93 F. Supp. 2d 649, 667–68 (E.D.N.C. 1999) (dismissing defendants since it was "unnecessary for plaintiff to proceed against both the officials in their official capacities and the [entity] under Kentucky and Monell"); accord Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002).

## V. PLAINTIFF'S WRONGFUL DEATH CLAIMS SHOULD ALSO BE DISMISSED.

The Plaintiff's wrongful death claim against the moving defendants should also be dismissed because of the Plaintiff's failure to comply with Iqbal and Twombly's mandates that specific facts must be alleged by the Plaintiff to demonstrate what each defendant did to cause Mr. King's alleged wrongful death. In addition to failing to specify what each defendant did or did not do, Plaintiff also failed to plead facts showing that any individual officer committed an act which a person of reasonable intelligence would know to be contrary to his or her duty and/or showing that any individual officer's actions were corrupt or malicious. Mere negligence is not enough to satisfy this requirement. Thus, each individual officer is entitled to public officer's immunity as to Plaintiff's state law claims. See, e.g., Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984); Smith v. Hefner, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952).

Finally, wrongful death claims require a plaintiff to show that the moving defendants "failed to exercise proper care in the performance of a legal duty which resulted in the wrongful death of decedent." Draughon v. Harnett Cty. Bd. of Educ., 158 N.C. App. 705, 708, 582 S.E.2d

343, 345 (2003). They also require that "the death of a person [be] caused by a wrongful act, neglect or default of" the defendant. N.C. Gen. Stat. § 28A-18-2(a). In light of the reasons stated above in the previous sections, Plaintiff's non-specific allegations do not meet these standards. Thus, Plaintiff has not successfully asserted any wrongful death claims.

## CONCLUSION

Based on the foregoing arguments and authorities, the moving defendants respectfully submit that their motion to dismiss should be granted.

Respectfully submitted, this the 7th of September, 2021.

**WOMBLE BOND DICKINSON (US) LLP**

By: /s/ *Brian F. Castro*
Brian F. Castro
N.C. State Bar No. 53412
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8135
Facsimile: (919) 755-6163
Email: Brian.Castro@wbd-us.com

James R. Morgan, Jr.
N.C. State Bar No. 12496
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3710
Facsimile: (336) 733-8394
E-mail: Jim.Morgan@wbd-us.com

*Counsel for Defendants*

20

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.3(d) and relying on word processing software, I hereby certify that the body, headings and footnotes of the foregoing brief consist of 6,169 words in total.

By: /s/ *Brian F. Castro*
Brian F. Castro
N.C. State Bar No. 53412
WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone:  (919) 755-8135
Facsimile:  (919) 755-6163
Email:  Brian.Castro@wbd-us.com

*Counsel for Defendants*

21

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on September 7, 2021, the foregoing was electronically filed with the Clerk of Court using CM/ECF system, which will automatically serve a copy upon all counsel of record:

ADDRESSEE(S):

L. Allyn Sharp
Allyn Sharp Law, PLLC
P.O. Box 730
Carrboro, NC 27510
E-mail: allynsharplaw@gmail.com

*Counsel for Plaintiff*

         By: <u>/s/ *Brian F. Castro*</u>
         Brian F. Castro
         N.C. State Bar No. 53412
         WOMBLE BOND DICKINSON (US) LLP
         555 Fayetteville Street, Suite 1100
         Raleigh, NC 27601
         Telephone:  (919) 755-8135
         Facsimile:  (919) 755-6163
         Email:  Brian.Castro@wbd-us.com

         *Counsel for Defendants*

22