IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIFFANY ADELE KING, as Administratrix of the Estate of Maurice Antoine King, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:21-CV-383 |
| CHARLES S. BLACKWOOD, in his official capacity as Sheriff of Orange County, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

In 2020, Maurice King was in federal custody at the Orange County jail. After he pled guilty but before he was sentenced, inmates assaulted and killed him. The administratrix of his estate sued the Sheriff and detention officers for violation of his constitutional rights. After discovery, the defendants moved for summary judgment.

The Court previously resolved the motions as to all claims and defendants except for one aspect of the § 1983 deliberate indifference claim against defendants Berry and Linster: whether they are entitled to qualified immunity for their actions and inactions from the time Mr. Berry first failed to look into Mr. King's cell while performing a security check after the assault through the time Mr. Berry finally entered Mr. King's cell to check on him. Because the evidence creates disputed questions of material fact, this claim will proceed to trial.

## I. Deliberate Indifference and Qualified Immunity

As summarized by the Magistrate Judge and adopted in the Court's earlier summary judgment order, the Fourteenth Amendment applies to the deliberate indifference claims against Mr. Berry and Mr. Linster, Doc. 124 at 18; Doc. 132 at 4, and the evidence is sufficient to show a Fourteenth Amendment violation on this point. Doc. 124 at 36–40; Doc. 132 at 2.

Qualified immunity shields government officials from liability unless the official violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *King v. Riley*, 76 F.4th 259, 264–65 (4th Cir. 2023) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *accord Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). As the Magistrate Judge stated without objection, in 2020, the defendants would have reasonably believed that the Eighth Amendment applied to the conduct at issue. Doc. 124 at 19. So, despite the applicability of the Fourteenth Amendment to the merits of the § 1983 claims, qualified immunity is evaluated under the Eighth Amendment standard because that was the law at the time of the events at issue.

"Prison officials violate the Eighth Amendment's cruel-and-unusual-punishment clause when they are deliberately indifferent to a substantial risk to an inmate's safety or medical needs." *Riley*, 76 F.4th at 264; *see also Farmer v. Brennan*, 511 U.S. 825, 828, 837 (1994). An Eighth Amendment violation requires a showing that the defendant subjectively knew of and disregarded "an objectively serious condition, medical need, or risk of harm." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (cleaned up). Subjective knowledge of a risk can be shown by an official's "refus[al] to verify

2

underlying facts that he strongly suspected to be true" or "to confirm inferences of risk that he strongly suspected to exist." *Farmer*, 511 U.S. at 843 n.8. In other words, "contrived obliviousness to a medical need" can constitute subjective knowledge. *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 106 (4th Cir. 1995).[1]

As the Magistrate Judge stated without objection, qualified immunity here turns on whether a reasonable official in the defendants' shoes would have understood that he was violating both the objective and subjective standard. Doc. 124 at 19, 30 n.22 (citing *Mays v. Sprinkle*, 992 F.3d 295, 301–02 (4th Cir. 2021)). So, the first issue for the Court is whether there is a disputed question of material fact as to whether Mr. Berry and Mr. Linster had subjective knowledge that Mr. King had an objectively serious medical need and that their response was inadequate. If so, the second issue is whether a reasonable officer objectively would have known that their failure to act was an Eighth Amendment violation. As is always appropriate at summary judgment, the evidence is viewed in the light most favorable to the non-moving party, here, the plaintiff. *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

## II. Defendants' Subjective Knowledge of Mr. King's Need

"A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to

---

[1] *See also Anderson v. Kingsley*, 877 F.3d 539, 544–45 (4th Cir. 2017) (quoting a criminal law treatise and noting that deliberate indifference is equivalent to criminal recklessness which "may consist of intentional failure to take care in disregard of the probable harmful consequences to [another] or of [another's] right to care. What must be intended is the conduct, not the resulting harm.").

3

establish such knowledge," *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016), and, of course, the requirement can be met by a combination of the two. Mr. Berry and Mr. Linster, unsurprisingly, do not admit that they had subjective knowledge of Mr. King's serious medical need and the inadequacy of their response. But there is enough evidence to allow a jury to so find, viewing the evidence in the light most favorable to the plaintiff and resolving all factual disputes in her favor.

During the relevant time, Mr. Berry and Mr. Linster knew Mr. King was in a high-security segregation pod with violent inmates and a high risk of inmate-on-inmate violence. Doc. 104 at ¶ 10; Doc. 105 at ¶ 10; *see* Doc. 124 at 37. They knew it was important for detainee safety to look into cells on a regular basis and to keep an eye on the pod through video monitors in the control room. Doc. 107-2 at 62, 100–101; Doc. 107-35 at 47, 57.[2] They knew detainees had a constitutional right to be supervised in order to protect them from known risks of assault and a constitutional right to have emergency medical needs met with a timely response. Doc. 107-24 at 90–91. They knew Mr. King had asthma and serious mental health issues. Doc. 107-5 at 216; *see* Doc. 124 at 9 n.10.[3] They knew they had repeatedly failed to look into Mr. King's cell during their rounds despite clear policy requiring them to do so. *See* Doc. 124 at 7–8, 37–38; *see*

---

[2] Citations use the pagination appended by the CM/ECF system, not any internal pagination that may be included in exhibits.

[3] The Magistrate Judge stated that "there is no evidence" that Mr. Berry and Mr. Linster "even knew of Mr. King's . . . medical history," Doc. 124 at 21, but that conclusion does not view the evidence in the light most favorable to the plaintiff. The Sheriff testified that detention officers knew of Mr. King's health issues from his booking report. Doc. 107-5 at 216.

4

*also Short v. Hartman*, 87 F.4th 593, 613 (4th Cir. 2023) (noting that under the Eighth Amendment test, violation of a policy is relevant). They knew they were not monitoring the pod common area through windows or video cameras, again in violation of policy.[4] *See* Doc 124 at 38–39. Rather, they were "cutting up" in the control room. Doc. 107-51 at 122–23.

On Mr. Linster's second round during the relevant time, he heard a concerning sound from Mr. King's cell. *See* Doc. 124 at 8. Even though he knew he had not looked into Mr. King's cell on his previous round, even though he knew he was required to look into Mr. King's cell regardless of whether he heard concerning sounds, and even though he knew that he and Mr. Berry had not been observing the pod at all in between rounds, he did not look into Mr. King's cell after hearing the sound. *See id.* at 8, 37–38.[5]

Instead, Mr. Linster returned to the control room and mentioned the concerning sound to Mr. Berry. *See id.* at 8. The two turned on the audio system in Mr. King's cell and heard other sounds of distress, described variously as moans, groans, or labored breathing, *see id.* at 8–9 & n.9, which caused them additional concern. Doc. 107-36 at 141. They intentionally delayed checking on Mr. King for some twenty minutes in order to avoid extra paperwork, *see* Doc. 124 at 39, despite knowing that no one had looked into Mr. King's cell or monitored the video for well over an hour. When Mr. Berry

---

[4] If they had looked, they would have seen highly suspicious comings-and-goings in and out of Mr. King's cell by inmates known to be violent. *See* Doc. 124 at 39.

[5] If he had looked, he would have seen Mr. King was in distress; this eventually happened when Mr. Berry finally went into the cell. *See* Doc. 124 at 9.

5

finally went to Mr. King's cell, he first obtained an inhaler from the nurse to take to the cell, showing that he knew that medical care was needed.  *See id.* at 9.[6]

In interviews with investigators the next day, both officers stated or at least implied that after they heard sounds coming from Mr. King's cell, they suspected he had been assaulted.  Doc. 107-3 at 5:44–5:45 (Berry telling investigators that when he checked on Mr. King, "It wasn't nothing to where I could have said somebody hit him in the face.  That was what I was looking for when we went in there, I was looking for some kind of, like, injuries."); Doc. 107-37 at 5:45 (Linster telling investigators that in the control room after turning on the intercom, "I said, 'Berry, when you make the round . . . ,' cause I want to be for sure before, you know, cause I don't want to make no mistake, cause I don't want to accuse nobody of something they ain't done.").[7]

Additionally, Mr. Berry and Mr. Linster both made inconsistent and arguably false material statements in their reports, interviews, depositions, and declarations, all tending to indicate they knew they had violated Mr. King's rights.  They each made multiple contradictory statements about what sounds they heard coming from Mr. King's cell, including someone talking to Mr. King, Mr. King asking for soap, labored breathing, and a moan or groan.  *See* Doc. 124 at 9 n.9.  Mr. Linster said in his declaration that he saw Mr. King sitting on his bed during his first round, despite the video showing that he did not look in the cell.  *See id.* at 8 n.8.  And in his deposition, Mr. Linster said that he saw

---

[6] Mr. Linster told investigators the next day that he knew that Mr. King would need a wheelchair for transport if he was having an asthma attack.  Doc. 107-37 at 5:45.

[7] Citations to video exhibits use the timestamp on the video footage.

6

Mr. King and another inmate each sitting on a different bed in Mr. King's cell, even though the cell only had one bed and video showed the other inmate had left the cell. *See id.* Also in his deposition, Mr. Linster stated that he told an inmate that he would look in Mr. King's cell and that he did so, but he admitted that he did not put this in his report the day after the incident. Doc. 107-36 at 119–21. Mr. Berry stated multiple times that he retrieved Mr. King's inhaler after first checking on him, despite the video showing that he brought the inhaler on his first visit to Mr. King's cell. *See* Doc. 124 at 9 n.10. Mr. Linster also reported this course of events multiple times. Doc. 105 at ¶ 29 (deposition); Doc. 107-38 (report); Doc. 107-37 at 5:45 (interview).

All of this evidence, if taken together and credited, would allow a jury to find that Mr. Berry and Mr. Linster delayed Mr. King's access to needed medical care, knowing that they heard concerning sounds from his cell while they were in the pod and the control room, knowing that they had been ignoring Mr. King for over an hour despite the known dangers in the pod, knowing that he had asthma and was moaning, and actually suspecting he had been assaulted. A jury could further infer from Mr. Berry's admission of delay to avoid paperwork that their inaction was not "accidental or inadvertent," *see Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017), and from their inconsistent and arguably false statements after the incident that they knew their response to Mr. King's medical need was inadequate.

The Court concludes that this evidence is sufficient to meet the Eighth Amendment standard for deliberate indifference. A jury could find facts supporting an inference that these two officers subjectively knew of and disregarded an objectively

7

serious condition, medical need, or risk of worsening harm to Mr. King. *See De'lonta*, 708 F.3d at 525; *Farmer*, 511 U.S. at 843 n.8.

## III. A Reasonable Officer's Knowledge of the Constitutional Violation

The second question is whether the violated right was "clearly established." *See Riley*, 76 F.4th at 264–65 (quoting *Harlow*, 457 U.S. at 818). "Eighth Amendment cases exist on a spectrum of intent and harm." *Pfaller v. Amonette*, 55 F.4th 436, 446 (4th Cir. 2022). At one end of that spectrum, the "clearly established" prong is unnecessary:

> The Fourth Circuit has carved out a class of deliberate-indifference claims to treat differently. Acknowledging that qualified immunity does not protect officials who *knowingly* disregard the law, we have reasoned that officials who are aware that their conduct is constitutionally deficient cannot rely on the clearly established prong. We have said that, sometimes, context makes the violation "obvious" and case law is thus not needed to establish this awareness. So when a defendant knows her conduct does not pass constitutional muster, we do not look to see if she violated clearly established precedent. Instead, we ask only if her actions violated the Eighth Amendment.

*Riley*, 76 F.4th at 265 (cleaned up) (summarizing relevant holdings in *Pfaller* and *Thorpe v. Clarke*, 37 F.4th 926 (4th Cir. 2022)). Only if the official "did not know her actions violated the Eighth Amendment" is she "entitled to the same two-pronged, qualified-immunity approach as every other government official." *Id.*

As discussed *supra*, there is a genuine dispute as to the officers' subjective knowledge, and there is evidence from which a jury could infer that the officers knew they were violating Mr. King's rights. If a jury resolves that factual dispute to conclude that Mr. Berry and Mr. Linster ignored obvious risks to Mr. King's health for over an hour and then, upon realizing that he was in urgent need of medical care, continued to

8

ignore him for twenty minutes to avoid extra paperwork, that would be an obvious constitutional violation. Under that version of the facts, the officers would not have needed case law directly on point to tell them that their conduct was unconstitutional, and the Court would not need to conduct the "clearly established" inquiry to determine that Mr. Berry and Mr. Linster are not entitled to qualified immunity.

Even if the Court were required to determine that the right violated on these facts was clearly established, the conclusion is the same. It has long been established that adequate medical care is a basic condition of humane confinement, *Farmer*, 511 U.S. at 832, and that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (cleaned up). The Fourth Circuit has recently denied qualified immunity for a violation of a prisoner's clearly established "right to adequate medical care and freedom from deliberate indifference to medical needs." *Pfaller*, 55 F.4th at 453–54 (quoting *Scinto*, 841 F.3d at 236);[8] *accord Tarashuk v. Givens*, 53 F.4th 154, 164 (4th Cir. 2022); *see also Jehovah v. Clarke*, 798 F.3d 169, 181–82 (4th Cir. 2015) (noting that a failure to treat an inmate's known symptoms is deliberate indifference). And, as the Supreme Court and the Fourth

---

[8] In defining this right broadly, the *Pfaller* court noted that "the Supreme Court has not demanded the same level of specificity in Eighth Amendment cases" that it has in Fourth Amendment cases. 55 F.4th at 453. In *Riley*, the Fourth Circuit held that inmates did not have a "clearly established right to properly conducted security checks." 76 F.4th at 265–68. Here, the alleged misconduct goes well beyond a failure to protect Mr. King from violence by failing to conduct security checks and well beyond the claim of deliberate indifference to medical needs alleged in *Riley*. *See id.* at 268–69. *Riley* did not overrule, question, or undermine the holding in *Pfaller*, and indeed quoted from it with approval. *See id.* at 265–66.

9

Circuit noted decades ago, "contrived obliviousness to a medical need" is deliberate indifference. *Brice*, 58 F.3d at 106; *Farmer*, 511 U.S. at 843 n.8; *see* discussion *supra*.

There is a genuine dispute here as to whether Mr. Berry and Mr. Linster were deliberately indifferent to Mr. King's medical needs. *See* discussion *supra*. So, there is likewise a genuine dispute as to whether they violated Mr. King's clearly established rights.

IV. **Conclusion**

Because there is a genuine dispute of material fact as to whether Mr. Berry and Mr. Linster knowingly violated the Eighth Amendment, a trial is required. The Court will deny summary judgment to defendants Berry and Linster as to the § 1983 claim. This claim will go to trial with its scope limited to deliberate indifference to Mr. King's medical needs from the time defendant Berry first failed to look into Mr. King's cell while performing a security check after the assault through the time defendant Berry finally entered Mr. King's cell to check on him.

It is **ORDERED** that the motion for summary judgment, Doc. 87, is **DENIED** as to the § 1983 claim against defendants Berry and Linster as narrowed herein.

This the 13th day of February, 2025.

UNITED STATES DISTRICT JUDGE

10

Case 1:21-cv-00383-CCE-JEP   Document 169   Filed 02/13/25   Page 10 of 10