IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIFFANY ADELE KING as Administratrix of the Estate of Maurice Antoine King,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES S. BLACKWOOD in his official capacity as Sheriff of Orange County, et al.,<br><br>Defendants. | ) | 1:21-CV-383 |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The plaintiff's decedent, Maurice King, was in the custody of the defendant Sheriff and passed away after an assault by other inmates. The plaintiff's claims against the Sheriff and two detention officers are set for trial on January 11, 2027. The defendants have filed a motion in limine to exclude certain evidence and testimony by medical examiner Matthew Crittenden. The defendants' motion in limine will be granted in part and denied in part. He may testify about his opinions that were disclosed timely and are within his role as a medical examiner, but opinion testimony outside his expertise, not timely disclosed, or irrelevant to the claims remaining for trial will be excluded.

## I. Relevant Background

Mr. Crittenden, a medical examiner and paramedic, was assigned to conduct Mr. King's death investigation. Doc. 203-4 at ¶¶ 1, 14. In that role, he completed a "Report of Investigation" soon after Mr. King's death. *Id.* at ¶ 9; Doc. 203-2; *see generally* N.C. Gen. Stat. § 130A-385 (2020) (statutory role of medical examiner).

On August 31, 2023, the plaintiff disclosed Mr. Crittenden as a witness under Federal Rule of Civil Procedure 26(a)(1). Doc. 203-1 at 1, 7, 13. The disclosure stated: "Local medical examiner. Mr. Crittenden is believed to have information regarding his report and the allegations in the amended complaint, including paragraphs 179 - 181." *Id.* at 7. Paragraphs 179 to 181 in the amended complaint identify Mr. Crittenden as a local medical examiner who requested documentation and video related to Mr. King's death from the Sheriff's office, who was refused access to that documentation and video, and whose report addressed the circumstances surrounding and possible cause of Mr. King's death. Doc. 30 at ¶¶ 179–81. In the same disclosure notice, the plaintiff provided a copy of Mr. Crittenden's report of investigation. Doc. 203-1 at 11; Doc. 203-2.

On October 11, 2023, the plaintiff supplemented her disclosures, providing defendants with an affidavit from Mr. Crittenden (the "first affidavit") and documents received from him in response to a subpoena. Doc. 203-3 at 2–3.

By court order, the deadline for the plaintiff's expert disclosures was March 1, 2024. Doc. 59 at 3. The court also set a deadline of June 1, 2024, for completion of all discovery, including any supplements to disclosures. Doc. 63.

The Court granted in part and denied in part the defendants' motions for summary judgment. Docs. 132, 169. The remaining claims for trial are: (1) the *Monell* claim against Sheriff Charles Blackwood; (2) the claim against defendants Blackwood and Travelers on the Sheriff's bond about whether Mr. King was injured by the neglect, misconduct, or misbehavior in office of Blackwood, and of detention officers Thomas E. Linster, III, and William D. Berry. Jr.; and (3) the Eighth Amendment claim against defendants Linster and Berry limited to deliberate indifference to Mr. King's medical needs from the time defendant Berry first failed to look into Mr. King's cell while performing a security check after the assault through the time defendant Berry finally entered Mr. King's cell to check on him. Doc. 132 at 8; Doc. 169 at 10.

The Court's decision denying qualified immunity to defendants Linster and Berry was affirmed on appeal in July 2026. Doc. 192 at 24–25. Soon thereafter, on August 3, 2026, the plaintiff provided defense counsel with Mr. Crittenden's recently-signed supplemental affidavit (the "second affidavit"). Doc. 203 at ¶ 6; Doc. 203-6. The case is set for trial on January 11, 2027.

The defendants move in limine to exclude certain testimony by Mr. Crittenden. Doc. 147. They contend that certain evidence is not relevant, would not be helpful to the jury, and is expert testimony from a witness not properly identified as such. Doc. 156.[1]

[1] The defendants' motion in limine was filed before the second summary judgment opinion, the interlocutory appeal, and the service of Crittenden's second affidavit. The defendants filed a supplemental brief in support of the motion after receiving the second affidavit. Doc. 202. At the recent hearing, the Court and the parties treated the motion in limine as covering this second affidavit, and the Court will continue to do so here. The Court has resolved all other motions in limine. *See* Doc. 204.

On August 21, 2026, the Court held a status conference and hearing on this and other pending motions in limine. Minute Entry 08/21/2026.

## II. Discussion

### A. The Plaintiff Timely and Adequately Disclosed Mr. Crittenden as a Hybrid Witness

Under Rule 26, parties must disclose witnesses and evidence during discovery that they may use during the case. Fed. R. Civ. P. 26(a). The witness disclosure rules have additional requirements for experts. Fed. R. Civ. P. 26(a)(2). Rule 26(a)(2) recognizes two types of expert witnesses: those that are required to provide a written report and those that are not. *Id*.

Under Rule 26(a)(2)(B), if the witness is one "retained or specially employed to provide expert testimony in the case," then the witness must provide a detailed report. Fed. R. Civ. P. 26(a)(2)(B). In contrast, "hybrid witnesses — fact witnesses with expertise that will inform their testimony — do not fall under Rule 26(a)(2)(B)'s purview" and are not required to provide a report. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022). If a party wants to present opinion evidence through a hybrid witness, the party still must disclose: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

"The hybrid witness exception applies when testimony is given arising out of personal observations made in the normal course of duty." *Nat'l R.R. Passenger Corp. v.*

*Ry. Express, LLC*, 268 F.R.D. 211, 216 (D. Md. 2010). "[A] hybrid witness may relay factual observations and express opinions flowing from those factual observations given their established expertise." *Id.*

Mr. Crittenden is both a fact witness and an expert witness based on his involvement as the medical examiner in the investigation of Mr. King's death and his expertise as a medical examiner and paramedic. *See id.*; Doc. 203-4 at ¶¶ 1, 9, 12. Because Mr. Crittenden is a hybrid witness, the plaintiff was not required to submit an expert report. *See Timpson*, 31 F.4th at 253. But for him to testify about his expert opinions, the plaintiff was required to disclose the information set forth in Rule 26(a)(2)(C). *See id.*

The plaintiff adequately and timely disclosed Mr. Crittenden as a hybrid witness. Her initial disclosure of Mr. Crittenden provided his name, his occupation, and the nature of his involvement in the facts of the case and stated that he had information relevant to his investigation of Mr. King's death and to specifically-identified paragraphs in the complaint. Doc. 203-1 at 7. She also provided his investigative report issued in his capacity as medical examiner. *Id.* at 11; Doc. 203-2.

Her timely supplemental disclosure included Mr. Crittenden's first affidavit. Doc. 203-3 at 2; Doc. 203-4. That affidavit detailed the subject matter on which Mr. Crittenden was expected to present evidence and summarized the facts and opinions on which he was expected to testify. Doc. 203-4. That affidavit put opposing counsel on notice of Mr. Crittenden's expected opinion and provided the required notice under Rule 26(a)(2)(C). For example, it stated that "I believe that without the delay in emergency

medical care caused by the Orange County Detention Center staff, this incident, while unfortunate, would not have been fatal." *Id*. at ¶ 13.

The plaintiff did not explicitly use the phrases "expert witness," "hybrid witness," or "Rule 26(a)(2)" in disclosing Mr. Crittenden as a witness. But the plaintiff's disclosure of his report and affidavit, read as a whole, show that he was expected to provide both fact and opinion testimony. The plaintiff's initial disclosure and first supplemental disclosure of Mr. Crittenden were provided during the discovery period and before the deadline for expert disclosure. *See* Doc. 59 at 3; Doc. 203-1 at 7, 13; Doc. 203-3 at 2–3.

The second affidavit was disclosed to the defendants well after the close of discovery. In large part, the affidavit simply provides details consistent with his first affidavit and the testimony fleshes out his opinion offered in the first affidavit that Mr. King's injuries would not have been fatal if the detention center staff had checked on Mr. King earlier and avoided the delay in emergency medical care. *Compare* Doc. 203-4 at ¶¶ 1, 11–14, *with* Doc. 203-6 ¶¶ 1–2, 5–11. Nothing in the Rules of Civil Procedure requires a party to disclose every single detail of a witness's testimony.

Mr. Crittenden may testify as a hybrid witness subject to the restrictions detailed in Section B *infra*.

**B. The Substance of Mr. Crittenden's Testimony**

"Hybrid fact/expert witnesses must testify from the personal knowledge they gained on the job." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d at 355, 371 (7th Cir. 2017) (cleaned up); *see also Downey v. Bob's Disc. Furniture*

*Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (stating that a hybrid witness' testimony arises from "ground-level involvement in the events giving rise to the litigation"). "[T]heir testimony is based on facts learned or observations made in the normal course of their duties, rather than based on a review of materials supplied to them by someone else." *Mayo v. City of Huntington,* No. 3:21-CV-471, 2022 WL 1298742, at *1 (S.D. W. Va. Apr. 29, 2022) (Mag. J., opinion and order).

District courts "may preclude [hybrid] witnesses from testifying beyond the scope of facts they learned and opinions they formed during the course of their project duties." *Indianapolis Airport Auth.*, 849 F.3d at 371 (stating that "the personal knowledge requirement may limit hybrid witnesses' testimony" (cleaned up)). Hybrid witnesses who testify beyond what they learned on the job must be disclosed as expert witnesses and provide reports on opinions beyond what they learned on the job as if they were retained. *See Mayo*, 2022 WL 1298742, at *2 ("[W]hile Dr. Stultz is not required to prepare a Rule 26(a)(2)(B) written report about opinions she reached based on her own evaluation and treatment of Plaintiff, to the extent Dr. Stultz intends to offer opinions based on materials provided to her by Plaintiff's counsel, a written report is required under Rule 26(a)(2)(B)."). And of course under Rule 702, a witness providing expert opinion testimony must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

**a. Efforts to obtain documents and videos**

Mr. Crittenden may testify about his efforts to obtain documents and video footage from the Orange County Sheriff's Office related to Mr. King's death. First, this evidence

is relevant. Mr. Crittenden's investigation report, provided to the defendants well before the discovery deadline, details his communications with the Sheriff's office requesting reports and video related to Mr. King's death and the fact that the office never responded with the requested information. Doc. 203-2 at 4. This evidence tends to support an inference of a cover-up and of deliberate indifference to a widespread custom of non-supervision which is relevant to the plaintiff's *Monell* claim. Moreover, to this extent Mr. Crittenden does not appear to be an expert witness at all; this is factual evidence about what he did and how Sheriff Blackwood and his staff responded.

To the extent such testimony might touch on opinions, it is still admissible. Mr. Crittenden requested that information as part of his job investigating Mr. King's death. *See Indianapolis Airport Auth.*, 849 F.3d at 371; N.C. Gen. Stat. § 130A-385(a) (2020) (requiring medical examiners to "make inquiries regarding the cause and manner of death"). The plaintiff sufficiently and timely disclosed his expected testimony and the related documents on this topic. Doc. 203-1 at 7, 11; Doc. 203-2; Doc. 203-3 at 2; Doc. 203-4; Doc. 203-5.

**b. Testimony Disclosed by Affidavit as to Cause of Death**

In his original report to the Chief Medical Examiner, Mr. Crittenden reported the likely cause and manner of death as "acute cardiac arrhythmia secondary to blunt force injury." Doc. 203-2 at 4. In his first affidavit, timely provided after he had access to the video and documentation from the Sheriff's Office as provided to the plaintiff during discovery, Mr. Crittenden testified that "without the delay in emergency medical care

caused by the Orange County Detention Center staff, this incident . . .would not have been fatal." Doc. 203-4 at ¶ 13. He also described what he saw in the video. *Id*. at ¶ 11.

Subject to appropriate foundation under Rule 702, Mr. Crittenden may testify about Mr. King's cause of death with three limitations: relevance to the remaining claims, within his role as a medical examiner, and timely disclosure.

The claims of the case have been narrowed since Mr. Crittenden's first affidavit. *See* Doc. 132 at 8; Doc. 169 at 10. Some of his opinions as proffered in the first affidavit are not relevant to the remaining claims and will confuse the jury. For example, the following statements are beyond the scope of the remaining claims:

> [J]ail staff did not respond in any urgent way, did not bring emergency medical personnel to Mr. King, and waited thirty-six minutes before carrying Mr. King out of his jail cell (without using a stretcher) and forty-three minutes before removing Mr. King from the jail pod in a wheelchair.
>
> . . .
>
> I also believe the prolonged period the assault lasted – while there is evidence it could have been stopped by the detention center staff – contributed to Mr. King's death due to sustained stress put on Mr. King's heart.

Doc. 203-4 at ¶¶ 11, 13.

As previously noted, Mr. Crittenden opines that absent delay by the defendants in obtaining medical care, Mr. King's injuries from the assault would not have been fatal. This opinion will be admissible to the extent he is addressing the delay between the time defendant Berry first failed to look into Mr. King's cell while performing a security check after the assault through the time defendant Berry finally entered Mr. King's cell to check on him. That is the only remaining claim against Mr. Berry and Mr. Linster. Doc. 169 at

10. To the extent he would opine that it was the delay caused by not intervening when the assault was in process or an alleged delay in obtaining medical care after Mr. Berry entered Mr. King's cell, those claims have been dismissed, and such testimony is likely to cause confusion if offered by the plaintiff.

As a hybrid witness, Mr. Crittenden may testify about his perceptions of what the videos show to the extent that he would have considered such information in his report or considered it in the typical course of his job as medical examiner and he may testify to the ways his report would have differed if he had received the requested materials from the detention center staff because such evidence appears to be part of his assignment duties. *See Indianapolis Airport Auth.*, 849 F.3d at 371. This testimony, assuming the plaintiff lays the proper foundation, is relevant to his opinion on cause of death as originally stated in his report to the Chief Medical Examiner and as stated in the first affidavit after viewing the video and documentation.

But to the extent Mr. Crittenden offers opinions about matters well outside his role as medical examiner and opinions about new matters disclosed in his second, untimely affidavit, such opinions will not be admitted. For example, the Court will exclude his opinion testimony that "[i]n theory, one would expect a person would have closer supervision in jail than on the outside." Doc. 203-6 at ¶ 4. There is nothing to show that he is an expert on how to supervise inmates in a jail or that investigation of such is part of his role as a medical examiner. This opinion was disclosed untimely and is speculative, outside the scope of his work as a medical examiner, and outside his expertise. *See* Rule 702; *Indianapolis Airport Auth.*, 849 F.3d at 371; N.C. Gen. Stat. § 130A-385(a) (2020).

Mr. Crittenden may testify about his opinion as to Mr. King's cause of death to the extent it is based on information he would normally include in his report as part of his job. Mr. Crittenden may testify to the ways his report would have differed if he had received the requested materials from the detention center staff because such evidence appears to be part of his assignment duties. *See Indianapolis Airport Auth.*, 849 F.3d at 371. Subject to appropriate foundation under Rule 702, Mr. Crittenden appears able to testify about how video and documentary evidence from the Sheriff's office would have affected his report as discussed in his first, timely affidavit. *See e.g*, Doc. 203-4 at ¶ 13.

The defendants contend any testimony by Mr. Crittenden about the cause of death beyond his initial report would supplant the role of the jury. Doc. 156 at 4. But the cause of Mr. King's death will be a central issue at trial, so assuming an appropriate foundation is laid for his qualifications, opinion testimony about the cause of death is likely to be helpful to the jury. *See* Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."). And it would be highly unfair to limit his testimony to his opinions reached without consideration of evidence in control of the Sheriff's Office which the Sheriff's Office refused to provide to him and which opinions he no longer holds.

Mr. Crittenden does base his opinions on materials he sought to obtain from the defendants but only later received from counsel. While he was not "retained or specially employed," arguably he should have been more clearly disclosed as an expert witness, not a hybrid witness. *See Mayo*, 2022 WL 1298742, at *2. To the extent that is the case, the defendants have been on notice of his opinions since well before the deadline for such

expert disclosures and his first affidavit provided most of the information required by Rule 26(a)(2)(B). Since the summary judgment decision and the appeal, and well in advance of trial, the plaintiff has supplemented the disclosure with further details about his opinions. The evidence is important and its exclusion would be unfair, as previously discussed. Finally, the defendants have not been harmed by any technical deficiencies in the plaintiff's disclosures. Exclusion under Federal Rule of Civil Procedure 37(c)(1) would not be appropriate.

## III. Conclusion

The defendants' motion in limine will be denied in part because the plaintiff disclosed Mr. Crittenden as a hybrid witness and granted in part because the plaintiff submitted at least some new opinions in the second, untimely affidavit. Mr. Crittenden may testify to subjects and evidence that were disclosed timely, are within his role as a medical examiner, and are relevant to the remaining claims. The defendants may raise objections during Mr. Crittenden's testimony to statements that lack the appropriate Rule 702 foundation and that were not disclosed timely.

It is **ORDERED** that the defendants' motion in limine directed to the testimony of Matthew Crittenden, Doc. 147, is **GRANTED in part** and **DENIED in part** as stated herein.

This the 14th day of September, 2026.

UNITED STATES DISTRICT JUDGE